# UNITED STATES DISTRICT COURT
for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL ETHER (ETH) AND SOLANA (SOL) CRYPTOCURRENCY, INCLUDING APPROXIMATELY 50.00005549 ETHER (ETH) AND 3950.99605 SOLANA (SOL), ON DEPOSIT IN BINANCE USER ID ACCOUNT 715378275 HELD IN THE NAME OF NGOC ANH NGUYEN

Case Number:
24-943M(NJ)

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

TO: **DANIEL S. SCHMEICHEL, a Special Agent with the Internal Revenue Service, Criminal Investigation, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

All Ether (ETH) and Solana (SOL) cryptocurrency, including approximately 50.00005549 Ether (ETH) and 3950.99605 Solana (SOL), on deposit in Binance User ID Account 715378275 held in the name of Ngoc Anh Nguyen

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before
12/26/2024 *(not to exceed 14 days)* , 2024

❑ in the daytime – 6:00 a.m. to 10:00 p.m. ❑ xat any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)* ❑ for ____ days. *(not to exceed 30)*
❑ until, the facts justifying, the later specific date of ____

Date and time issued 12/12, 2024; 3:46 p.m.

*Judge's signature*

City and state: Milwaukee, Wisconsin

THE HONORABLE NANCY JOSEPH
United States Magistrate Judge
*Name & Title of Judicial Officer*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

## ATTACHMENT A

### I. Seizure Procedure

The United States is authorized to seize all Ether (ETH) and Solana (SOL) cryptocurrency, including approximately 50.00005549 Ether (ETH) and 3950.99605 Solana (SOL), on deposit in the **Target Account** by having the Subject Provider transfer all funds in the **Target Account** to a United States-controlled virtual currency wallet specified by the government.

Binance is instructed to allow incoming funds but not allow funds to be withdrawn, transferred, wired, routed or otherwise disbursed by or to any persons (other than the federal agents authorized to seize the funds) for a period of three (3) days from the service of the warrant.

### II. Subject Provider

**Nest Services Limited**

**House of Francis, Room 303, Ile Du Port, Mahe, Seychelles**

### III. Target Account

| User ID | Name | Email Address |
|---|---|---|
| **715378275** | Ngoc Anh Nguyen | 969166888ck@gmail.com. |

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL ETHER (ETH) AND SOLANA (SOL) CRYPTOCURRENCY, INCLUDING APPROXIMATELY 50.00005549 ETHER (ETH) AND 3950.99605 SOLANA (SOL), ON DEPOSIT IN BINANCE USER ID ACCOUNT 715378275 HELD IN THE NAME OF NGOC ANH NGUYEN

Case Number: 24-943M(NJ)

## APPLICATION FOR A WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Daniel S. Schmeichel, being duly sworn depose and say:

I am a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) and have reason to believe that in the Northern District of California there is now certain property, namely, all Ether (ETH) and Solana (SOL) cryptocurrency, including approximately 50.00005549 Ether (ETH) and 3950.99605 Solana (SOL), on deposit in Binance User ID Account 715378275 held in the name of Ngoc Anh Nguyen, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) in conjunction with 28 U.S.C. § 2461(c), as property that (1) constitutes or is derived from proceeds traceable to specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. §§ 1343 and 1349; and (2) was involved in, or is traceable to funds involved in, money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

❑ Delayed notice of ____ days (give exact ending date if more than 30 days:_________ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Affiant
Daniel S. Schmeichel, IRS-CI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

12/12/24 @ 3:48 p.m.

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT

I, Daniel S. Schmeichel, having been duly sworn on oath, state as follows:

### AFFIANT'S BACKGROUND

1. I am a Special Agent with Internal Revenue Service, Criminal Investigation (IRS-CI), and have been so employed since February 2010. As an IRS-CI Special Agent, my duties include investigating criminal violations of Title 26 (the Internal Revenue Code), Title 31 (the Bank Secrecy Act), and Title 18 of the United States Code, as well as the civil and criminal asset forfeiture provisions related to these statutes. I have been a member of the Federal Bureau of Investigation Milwaukee Cyber Task Force since 2017, where I work with FBI agents and task force officers on cases involving unauthorized computer intrusions, cyber-related frauds, and the theft of personal identifying information, among other federal offenses.

2. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and received training in topics involving Federal criminal law, criminal investigative techniques, financial crime investigation, and criminal procedure. I am a graduate of IRS-CI's Special Agent Investigative Techniques training program, through which I received training in investigating financial and tax crimes, investigating money laundering crimes, and in the seizure and forfeiture of assets traceable to proceeds of crime or which were used to facilitate the commission of crimes. I have also completed advanced training programs in asset forfeiture and money laundering through the Department of Justice and Department of Homeland Security. I have a Bachelor of Science degree in consumer science with an emphasis in business from the University of Wisconsin – Madison and a Master of Business Administration degree from the University of Wisconsin – Eau Claire.

3. I have received specialized training in cryptocurrency and the investigation of cryptocurrency-related crimes and have obtained several associated certifications from Chainalysis and TRM Labs, including TRM Certified Investigator (TRM-CI), TRM Advanced Crypto Investigator (TRM-ACI), Chainalysis Investigation Specialist Certification (CISC), and Chainalysis Ethereum Investigations Certification (CEIC).

4. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

5. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein, from records obtained by and reports filed by the Brown County Sheriff's Office, and from other law enforcement officers, all of which I believe to be truthful and reliable.

## PURPOSE OF AFFIDAVIT

6. This affidavit is submitted in support of an application for a seizure warrant to seize the following property, referred herein as the **"Target Account,"** and further described in Attachment A: all Ether (ETH) and Solana (SOL), including approximately 50.00005549 Ether (ETH) and 3,950.99605 Solana (SOL), held in **Binance User ID Account 715378275**, which is an account held by the Binance operating entity Nest Services Limited, incorporated under the laws of the Republic of Seychelles with registration number 238045 and address at House of

Francis, Room 303, Ile Du Port, Mahe, Seychelles. The **Target Account** is registered to Ngoc Anh Nguyen with the email address 969166888ck@gmail.com.

7. As described below, 50.00005549 Ether (ETH) and 3950.99605 Solana (SOL) are currently contained within the **Target Account** (hereinafter, "the **Target Funds**"), and have been traced to, or is property involved in, wire fraud and money laundering offenses. In total, as of November 14, 2024, the **Target Funds** were valued at approximately $1,009,375.47.

8. Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe the contents in the **Target Account** constitutes or is derived from and traceable to proceeds obtained, directly or indirectly, from a wire fraud offense or offenses committed in violation of 18 U.S.C. §§ 1343 and 1349. I further submit that, based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe the **Target Account,** and the funds contained therein, were used to conceal the nature, source, ownership, and control of wire fraud proceeds, constituting a money laundering offense or offenses committed in violation of 18 U.S.C. § 1956. Accordingly, I submit that probable cause exists to believe that all funds held on deposit in the **Target Account** are:

a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. §§ 1343 and 1349, and therefore subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

b. Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

c. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

9. On or about November 15, 2024, Binance notified law enforcement that it had placed a voluntary courtesy freeze on the **Target Account** pending a documented official request (e.g. a seizure warrant or court order) for the **Target Account** contents.[1]

10. With respect to seizure, 21 U.S.C. § 853(f) provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a protective order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture." As set forth further below, there is a substantial risk that the **Target Funds** in the **Target Account** will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure them at the time the requested searches are executed. As a form of cryptocurrency, some or all of the **Target Funds** are inherently portable. I therefore submit that a protective order under 21 U.S.C. § 853(e) would not be sufficient to assure that the **Target Funds** in the **Target Account** will remain available for forfeiture.

11. For the reasons listed above, the United States seeks combined criminal and civil seizure warrants, authorizing law enforcement to seize the **Target Account** and preserve the **Target Funds** pending further forfeiture proceedings.

## BACKGROUND AND DEFINITIONS

12. **Virtual Currency:** Digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Virtual currencies are not issued by any government or

[1] Binance is a cryptocurrency exchange that allows customers to buy, sell, exchange, and transfer a variety of cryptocurrencies. Binance is registered in the Republic of Seychelles and is, therefore, not subject to U.S. jurisdiction and cannot be compelled by U.S. process. However, as stated, Binance has placed a voluntary courtesy freeze on the **Target Account** and is willing to release those assets to U.S. law enforcement authorities upon receipt of a lawful order issued by a U.S. Court.

bank like traditional fiat currencies, such as the U.S. dollar, but rather are generated and controlled through computer software.

13. **Cryptocurrency:** A virtual currency in which transactions are verified and records maintained by a decentralized system using cryptography, rather than by a centralized authority. Common cryptocurrencies include Bitcoin (BTC) and Ether (ETH).

14. **Blockchain:** The code behind many virtual currencies requires that all transactions involving that virtual currency be publicly recorded on what is known as a blockchain. The blockchain is essentially a distributed public ledger, run by a decentralized network of computers, containing an immutable and historical record of every transaction utilizing that blockchain's technology. The blockchain can be updated multiple times per hour and records every virtual currency address that has ever received that virtual currency and maintains records of every transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies.

15. **Ether (ETH):** The native cryptocurrency of the Ethereum blockchain network.

16. **Solana (SOL):** The native cryptocurrency of the Solana blockchain network.

17. **Virtual Currency Address:** Virtual currency addresses are the particular virtual locations to or from which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.

18. **Virtual Currency Wallet:** There are various types of virtual currency wallets, including software wallets, hardware wallets, paper wallets. The virtual currency wallets at issue for the purposes of this affidavit are software wallets (i.e., a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and

private keys). A virtual currency wallet allows users to store, send, and receive virtual currencies. A virtual currency wallet can hold many virtual currency addresses at the same time.

19. As discussed briefly above, wallets that are hosted by third parties are referred to as "hosted wallets" because the third party retains a customer's funds until the customer is ready to transact with those funds. Conversely, wallets that allow users to exercise total, independent control over their funds are often called "unhosted" wallets.[2]

20. **Blockchain Explorer**: Online tools that operate as a blockchain search engine allowing users the ability to search for and review transactional data for any addresses on a particular blockchain. A blockchain explorer is software that uses API[3] and blockchain nodes to draw data from a blockchain and uses a database to arrange and present the data to a user in a searchable format.

21. **Virtual Currency Exchanges (VCEs):** VCEs are trading and/or storage platforms for virtual currencies, such as BTC, ETH, etc. Many VCEs also store their customers' virtual currency in virtual currency wallets. As previously stated, these wallets can hold multiple virtual currency addresses associated with a user on a VCE's network. Because VCEs act as money services businesses, they are legally required to conduct due diligence of their customers (i.e., Know Your Customer (or KYC) checks) and to have anti-money laundering programs in place (to the extent they operate and service customers in the United States).

[2] According to the Department of the Treasury, an unhosted wallet is not hosted by a third-party financial system. With knowledge of the address alone, it can be very difficult or impossible to determine who is accessing or in control of the use of cryptocurrencies in an unhosted wallet. Unhosted wallets allow for anonymity and concealment of illicit financial activity.

[3] API stands for application programming interface, which is a set of definitions and protocols for building and integrating application software.

22. **Blockchain Analysis:** It is virtually impossible to look at a sole transaction on a blockchain and immediately ascertain the identity of the individual behind said transaction. That is because blockchain data generally only consists of alphanumeric strings and timestamps. That said, law enforcement can obtain leads regarding the identity of the owner of an address by analyzing blockchain data to figure out whether that same individual is connected to other relevant addresses on the blockchain. To do so, law enforcement can use blockchain explorers, as well as commercial services offered by several different blockchain-analysis companies. These companies analyze virtual currency blockchains and attempt to identify the individuals or groups involved in transactions. Through numerous unrelated investigations, law enforcement has found the information provided by these tools to be reliable.

## FACTS SUPPORTING FINDINGS OF PROBABLE CAUSE

### A. Overview of Criminal Activity

23. On or about April 18, 2024, VICTIM-1, a resident of the Village of Suamico, Brown County, which is located in the State and Eastern District of Wisconsin, contacted the Brown County Sheriff's Office regarding a fraud complaint. The victim reported that he had lost approximately $125,000 in an online cryptocurrency investment fraud.

24. VICTIM-1 reported that he began communicating with a subject whom he followed on TikTok[4], identified as Chen Yue (aka "Eva"), in approximately March of 2024. Eva sent VICTIM-1 a message through TikTok's messaging function, and the two began communicating. Shortly after initiating contact, Eva requested the conversation be moved to Telegram.[5]

---

[4] TikTok is a social media application that allows users to create, share, and discover short-form video content.

[5] Telegram is a cloud-based messaging application that allows users to send text messages, multimedia files, and conduct voice and video calls.

25. VICTIM-1 continued communicating with Eva for several weeks. Eva claimed to be from Beijing, China, and was living in the Los Angeles, California, area. Eva said she was planning to retire at 45 and was looking for her soulmate to travel the world with. VICTIM-1 said he communicated with Eva daily for hours each day, and VICTIM-1 developed what he believed to be a romantic relationship with Eva.

26. After several weeks of communicating, Eva revealed that she had millions of dollars she had made investing, first through bitcoin and then later through gold futures trading. She said she had an inside track on investing because of her uncle's connections in government. She said her uncle was retiring soon so she had to get all of her gold future trades completed before his retirement. She explained that trading involved uploading funds to the exchange through cryptocurrency, and then buying and selling futures of gold in specified ten-minute windows related to the timing of China's gold buying activity, which would then lead to making large profits.

27. VICTIM-1 decided to "invest" as Eva suggested, and Eva directed VICTIM-1 on how to complete the transactions by sending VICTIM-1 marked up screenshots that directed VICTIM-1 throughout the process. To conduct the trades, Eva directed VICTIM-1 to download an application on his mobile phone, which appeared to be an online investment platform.

28. On or about March 11, 2024, VICTIM-1 wired $44,000.00 from his bank account to Crypto.com, a virtual currency exchange. From there, the U.S. currency was converted to the cryptocurrency Ether (ETH).

29. On March 11, 2024, VICTIM-1 transferred 10.49263712 ETH from his Crypto.com account to Ethereum address 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F,

as directed by Eva, for what VICTIM-1 believed was a transfer to an online investment platform through which VICTIM-1 would invest in what he believed to be gold futures.

30. On or about March 15, 2024, VICTIM-1 transferred 0.66778192 ETH from his Crypto.com account to address 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F, as directed by Eva, for what VICTIM-1 believed was a transfer to an online investment platform through which VICTIM-1 would invest in what he believed to be gold futures.

31. On or about March 19, 2024, VICTIM-1 obtained a $40,000.00 personal loan from a credit union to invest additional funds. On or about March 19, 2024, VICTIM-1 wired $40,000.00 to his Crypto.com account, which was converted to Ether (ETH).

32. On or about March 19, 2024, VICTIM-1 transferred 11.91006304 ETH from his Crypto.com account to address 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F, as directed by Eva, for what VICTIM-1 believed was a transfer to an online investment platform through which VICTIM-1 would invest in what he believed to be gold futures.

33. VICTIM-1's relationship with Eva soured, and VICTIM-1 attempted to withdraw his funds from the online investment application. At the time, based on the balance indicated on the application, VICTIM-1 believed his investment was worth approximately $245,351.68. The withdrawal was rejected, and the investment platform said that VICTIM-1 would first need to pay 20% or the value of his investment account for taxes before he could withdraw the funds.

34. VICTIM-1 borrowed $41,000.00 from his wife to pay what he believed were the taxes required for him to withdraw his money from the investment account. On or about April 4, 2024, VICTIM-1 wired $41,000.00 to his Crypto.com account. VICTIM-1 then transferred 11.99305514 ETH from his Crypto.com account to address

0x9c9a2c5167c2ba7e7c7dc7777540a502089f04c1as to pay what he believed to be the taxes due, which he believed would allow him to withdraw his money from the investment account.

35. Once the "taxes" were paid, VICTIM-1 believed his funds to have been "released" and were eligible for withdrawal. However, when VICTIM-1 attempted to withdraw the funds, he was told he needed to pay the equivalent of a $102,447.00 fee to receive his funds. VICTIM-1 was unable to withdraw any of his funds.

36. VICTIM-1 said that the trading application on his phone which he used to trade the funds in the investment scheme changed several times. The application would stop working, and Eva would direct VICTIM-1 to download a different application. In the end, VICTIM-1 was directed by Eva to a website that appeared to show VICTIM-1's investment account.

37. Based on my training and experience, I know that the Google Play Store, which is the native application store for mobile devices running the Android mobile device operating system, will remove or disable applications on Android devices if Google learns that the application is fraudulent or malicious.

38. Based on my training and experience, I know that a cryptocurrency confidence investment scam[6] is a fraudulent scheme in which criminals initially gain a victim's trust by fostering a relationship or friendship, often posing as potential romantic partners or business associates. Over time, the criminal manipulates the victim in investing in a fake financial opportunity, frequently involving cryptocurrencies, with the promises of large profits. Once the victim has invested a significant amount of money, the criminal abruptly cuts off all communications and absconds with the funds.

[6] Formerly referred to as a "pig butchering" investment scam.

39. Based on my training and experience, I believe that VICTIM-1 was the victim of a cryptocurrency confidence investment scheme and that his funds were never transferred to any online investment platform, nor invested in any gold futures, as the online investment applications had made it appear to VICTIM-1.

**B. Tracing Illicitly Obtained Funds from VICTIM-1 to the Target Account**

40. I conducted an analysis using the publicly available Blockchain Explorer Etherscan (https://etherscan.io) and a proprietary cryptocurrency tracing tool provided by TRM Labs. Based on the information provided by VICTIM-1, I was able to locate the transactions associated with VICTIM-1's Crypto.com wallet which contained Ethereum address 0x9603d69617ce0d6e0345fee5bd888a1e5669fc8e. The address received the following funding transactions from Crypto.com (and which are depicted in the below chart):

a. Date/time: 03-11-2024 17:31:11

Amount: 10.495 ETH (approx. value $33,188.45)

b. Date/time: 03-15-2024 22:54:35

Amount: 0.66856 ETH (approx. value $2,114.19)

c. Date/time: 03-19-2024 22:23:23

Amount: 11.91113 ETH (approx. value $37,666.70)

d. Date/time: 04-04-2024 16:37:47

Amount: 11.995 ETH (approx. value $37,931.92)




41. VICTIM-1 sent the following outgoing transactions from his wallet[7]:

a. Date/time: 03-11-2024 17:46:35

Amount: 10.49263711 ETH

To: 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F

b. Date/time: 03-15-2024 23:27:11

Amount: 0.66778191 ETH

To: 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F

c. Date/time: 03-19-2024 22:28:47

Amount: 11.91006304 ETH

To: 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F

d. Date/time: 04-04-2024 16:55:23

Amount: 11.99305513 ETH

To: 0x9c9A2C5167C2Ba7E7c7Dc7777540a502089f04c1

[7] The transaction amounts are slightly less than the amounts listed in paragraph 40 due to transaction fees required to conduct the outgoing transactions.

42. Outgoing transactions sent from Ethereum address 0x9c9A2C5167C2Ba7E7c7Dc7777540a502089f04c1 included the following transactions:

a. Date/time: 04-04-2024 17:39:59

   Amount: 11.993 ETH

   To: 0xB1dA86CEcf17a444C6E09Afb6A2363a324700dE9 (Target Address 1)

43. Outgoing transactions sent from Ethereum address 0x3E0A4c66efcB243448A1cd41b7e06C16CcFD023F included the following transactions:

a. Date/time: 03-11-2024 18:00:11

   Amount: 10.49 ETH

   To: 0xB1dA86CEcf17a444C6E09Afb6A2363a324700dE9 (Target Address 1)

b. Date/time: 03-15-2024 23:39:11

   Amount: 0.667 ETH

   To: 0xB1dA86CEcf17a444C6E09Afb6A2363a324700dE9 (Target Address 1)

c. Date/time: 03-19-2024 22:36:35

   Amount: 11.9 ETH

   To: 0xB1dA86CEcf17a444C6E09Afb6A2363a324700dE9 (Target Address 1)

44. The below chart depicts the date and time that VICTIM-1 sent cryptocurrency funds from his wallet, and the two addresses that received the funds. The chart also depicts the date and time that VICTIM-1's funds were transferred out of the receiving addresses and to Ethereum address 0xB1dA86CEcf17a444C6E09Afb6A2363a324700dE9 (Target Address 1).




45. Based on my training and experience, I know that the rapid movement of funds from a cryptocurrency address that received fraud proceeds to another cryptocurrency address, especially when the transactions involve nearly the same amount of incoming and outgoing cryptocurrency, can indicate an attempt to obfuscate the source and nature of the funds.

46. Outgoing transactions sent from Ethereum address 0xB1dA86CEcf17a444C6E09Afb6A2363a324700dE9 (Target Address 1) included the following transactions:

a. Date/time: 03-14-2024 3:10:47

   Amount: 34.516142157 ETH

   To: 0x315298b69bE7085c3F57C594Fe36B12990B26F0e (Target Address 2)

b. Date/time: 05-01-2024 0:46:47

   Amount: 35.08429 ETH

   To: 0x315298b69bE7085c3F57C594Fe36B12990B26F0e (Target Address 2)

c. Date/time: 03-20-2024 14:08:23

   Amount: 12.566518418 ETH

To: 0x97e6C922fA6590ca0cA9647e3DDBe0F6095eA5C2 (Target Address 3)

47. Outgoing transactions sent from Ethereum address 0x315298b69bE7085c3F57C594Fe36B12990B26F0e (Target Address 2) included the following transactions:

a. Date/time: 03-21-2024 8:47:59

   Amount: 0.01 ETH[8]

   To: 0x8013EEBF731CA1c8888066687a58A73CaD851A08 (Target Address 4)

b. Date/time: 03-21-2024 8:55:59

   Amount: 34.51284772 ETH

   To: 0x8013EEBF731CA1c8888066687a58A73CaD851A08 (Target Address 4)

c. Date/time: 05-20-2024 4:44:11

   Amount: 64.78375621 ETH

   To: 0x8013EEBF731CA1c8888066687a58A73CaD851A08 (Target Address 4)

48. Outgoing transactions sent from Ethereum address 0x97e6C922fA6590ca0cA9647e3DDBe0F6095eA5C2 (Target Address 3) included the following transactions:

a. Date/time: 03-21-2024 8:58:35

   Amount: 68.149558275 ETH

[8] Based on my training and experience, I believe this transaction represents a possible test transaction. Before transferring large amounts of cryptocurrency, senders will sometimes first send a small transaction to ensure that the receiving address is accurate and that the funds are correctly received by the destination address.

To: 0x8013EEBF731CA1c8888066687a58A73CaD851A08 (Target Address 4)

49. The below chart depicts that movement of funds from Target Address 1 to Target Addresses 2 and 3, and from Target Addresses 2 and 3 to Target Address 4.




50. Ethereum address 0x8013EEBF731CA1c8888066687a58A73CaD851A08 (Target Address 4) received the following deposits:

| Date/Time (UTC) | From | Amount |
|---|---|---|
| 11/18/2024 9:27 | 0x29a9cb9b5cdb296ad1f05280238a6aac368843e7 | 0 ETH |
| 11/18/2024 9:26 | 0x297726eca9d015282a3401a97f595df4dcdc43e7 | 0 ETH |
| 11/17/2024 5:39 | Target Address 5[9] | 0 ETH |
| 11/16/2024 22:03 | Target Address 5 | 0.000045 ETH |
| 11/13/2024 6:02 | Target Address 5 | 0 ETH |

[9] Target Address 5 is 0xca39dacd9758c8ed88b1ef7a3383f5588a26f3a0.

| | | |
|---|---|---|
| 11/13/2024 6:01 | Target Address 5 | 0 ETH |
| 11/10/2024 11:09 | Target Address 5 | 0 ETH |
| 11/10/2024 11:09 | Target Address 5 | 0 ETH |
| 9/10/2024 11:15 | 0x6b429945375e18805c926dbea6e4ffefa0e085e6 | 0.00001 ETH |
| 9/10/2024 11:12 | 0x6b42a6d83290d093b7b53265878111a21c9a85e6 | 0.0001 ETH |
| 9/10/2024 10:57 | 0x6b426a1e5748c23d839e3a213d714521aae585e6 | 0 ETH |
| 9/10/2024 10:53 | 0x6b429945375e18805c926dbea6e4ffefa0e085e6 | 0.00001 ETH |
| 7/2/2024 5:06 | Target Address 2 | 5.365565936 ETH |
| 7/2/2024 5:05 | 0xac319fba26610b7685cb2563d00ef99f51a7553f | 24.267845014 ETH |
| 7/2/2024 5:03 | Target Address 3 | 87.257960166 ETH |
| 5/20/2024 4:46 | Target Address 3 | 211.331605309 ETH |
| 5/20/2024 4:44 | Target Address 2 | 64.783756217 ETH |
| 3/21/2024 8:58 | Target Address 3 | 68.149558275 ETH |
| 3/21/2024 8:55 | Target Address 2 | 34.512847729 ETH |
| 3/21/2024 8:47 | Target Address 2 | 0.01 ETH |

51. Several smaller value outgoing transactions were sent from Ethereum address 0x8013EEBF731CA1c8888066687a58A73CaD851A08 (Target Address 4) until November 13, 2024, when the following series of larger value outgoing transactions were sent to the **Target Account**:

a. Date/time: 11-10-2024 11:08:23

   Amount: 4.5 ETH

   To: 0xcA391E8F42bC94A9888f5270C9cebe91b522F3a0 (Target Address 5)

Virtual Currency Exchange: Binance

b. Date/time: 11-13-2024 6:00:23

Amount: 90 ETH

To: 0xcA391E8F42bC94A9888f5270C9cebe91b522F3a0 (Target Address 5)

Virtual Currency Exchange: Binance

c. Date/time: 11-14-2024 2:04:59

Amount: 50 ETH

To: 0xcA391E8F42bC94A9888f5270C9cebe91b522F3a0 (Target Address 5)

Virtual Currency Exchange: Binance




52. Target Address 5 is a deposit address held at the cryptocurrency exchange Binance within the **Target Account**. Transactions sent to the deposit address would be added to the balance of cryptocurrency in the **Target Account.**

53. Based on my training and experience, I know that subjects who illicitly use virtual currency are likely to know that most virtual currency blockchains are public and can be traced by law enforcement and others using blockchain analytics tools. Therefore, these criminal actors do their best to launder their criminal proceeds through a variety of means, including splitting up virtual currency criminal proceeds into smaller amounts, which are then shuffled through numerous other addresses before being transferred to a virtual currency exchange, where it can be converted to another type of virtual currency or fiat currency and then withdrawn.

54. Further, based on my training and experience, I know that the movement of virtual currency criminal proceeds into a virtual currency exchange makes it nearly impossible to trace the movement of those criminal proceeds out of the exchange using most publicly available blockchain explorers. This is because once funds are transferred to the customer's deposit address held at an exchange, an account entry is made to the customer's account ledger to credit the account for the deposit amount. The exchange may then move the funds from the address internally as needed, pooling and co-mingling the funds with other funds within the exchange. When the customer withdraws or transfers funds from their account, the exchange may send those funds from any available cryptocurrency address controlled by the exchange, making a withdrawal entry to the customer's account ledger to deduct the withdrawn funds from their account. There is typically no publicly-visible direct connection between the funds received at the customer's deposit address and the outgoing address the customer's funds are sent from. Without records from the exchange, one would not know which outgoing transactions from the exchange were directly traceable to the criminal proceeds.

55. Based on my analysis of the movement of VICTIM-1's cryptocurrency that he believed was invested in an investment platform, it does not appear that VICTIM-1's funds were transferred into an investment platform prior to the funds being transferred to Binance in November 2024.

**C. Review of Internet Crime Complaint Center (IC3) complaint ID I2408011901118321**

56. I reviewed a complaint filed with the Federal Bureau of Investigation's Internet Crime Complaint Center (IC3), dated August 1, 2024 and bearing complaint ID I2408011901118321. In the complaint, VICTIM-2, a resident of Georgia, reported a loss of $133,580.00. In the report, VICTIM-2 wrote:

"All of these wires went sent to either fund or pay for a Fine or Taxes or Fees for money earned on the DMM Bitcoin platform. All came from my banks and I had to send the wire from Strike or Crypto to DMM would supply a packet address for the funds. 1st and 2nd 0x1D95B2286cC4E8046bb868A1F20b2EC7CcafaB9F 3rd and 4th and 5th and 6th 3DhdQDBm1FZmy3CA1YqNpjxcTXeX9qTY8g This was the DMM Bitcoin wallet. Over the course of a month I was direct to Buy up or Buy Down and told amounts to enter via Telegram from a acquaintance that friended me in a text and the Telegram. I made $551000 and was told it was time to get out and cash out. I attempted to withdrawal from DMM Bitcoin to my Crypto wallet. That is when I was hit with a fine. Then taxes. Then channel test fee. Then financial service charge. This is when loans were taken out to pay the charges and to try to get the money."

57. I conducted an analysis using the publicly available Blockchain Explorer Etherscan (https://etherscan.io) and a proprietary cryptocurrency tracing tool provided by TRM Labs. I analyzed activity involving Ethereum address 0x1D95B2286cC4E8046bb868A1F20b2EC7CcafaB9F, which was reported in the IC3 complaint. The following outgoing transfers from that address were sent to Ethereum address 0x97e6c922fa6590ca0ca9647e3ddbe0f6095ea5c2 (Target Address 3, which also received and transferred a portion of the fraud proceeds traceable to VICTIM-1):

a. Date/time: 06-01-2024 5:18:11

   Amount: 6.1305 ETH

b. Date/time: 06-30-2024 5:56:23

   Amount: 36.630742506 ETH

c. Date/time: 07-02-2024 5:11:59

Amount: 7000 USDC

d. Date/time: 07-11-2024 1:06:35

Amount: 16.075846164 ETH

e. Date/time: 2024-07-20 1:31:11

Amount: 6.220226625 ETH

58. From Target Address 3, the funds flowed to Target Address 4 (which also received and transferred a portion of the fraud proceeds traceable to VICTIM-1, as explained above). Target Address 4, the funds flowed to the **Target Account**.




59. Based on my training and experience, I believe VICTIM-2 was the victim of a cryptocurrency confidence investment scheme.

**D. Review of Activity Associated with the Target Account**

60. I reviewed the records provided by Binance for the **Target Account**. The account was registered on or about April 9, 2023, and has User ID 715378275. The account's registered user, according to records provided to Binance to open the account, is:

a. Name: Ngoc Anh Nguyen

b. Email: 969166888ck@gmail.com

c. Citizen Identification Card Number: 048301000997

d. Citizen Identification Card Country: Vietnam

e. Date of Birth: May 01, 2001

61. Based on access logs, the account was accessed from IP addresses geolocated to the following countries: Vietnam, Cambodia, South Korea, and Taiwan. From November 10, 2024, through November 13, 2024, the account was accessed from two IP addresses geolocated to South Korea.

62. The following cryptocurrencies were deposited into the account since approximately May 2, 2023, through a series of approximately 32 deposits:

| Asset Abbreviation | Asset Name | Quantity | Estimated US Dollar Value |
|---|---|---|---|
| ETH | Ethereum | 144.5 | $ 465,367.00 |
| BNB | BNB (formerly Binance Coin) | 39.69048193 | $ 23,155.42 |
| USDT | US Dollar Token | 11,330,265 | $ 11,330,265.00 |
| | | Total: | $ 11,818,787.40 |

63. Specifically, the account received the following deposits, which I believe to be traceable to a portion of the funds defrauded from VICTIM-1:

a. Date/time: 11-10-2024 11:08:32

Source address: Target Address 4

Deposit address at Binance: Target Address 5

Transaction ID:

0x9a1fee406047af92e5cfd0e8a3425373d10aa7000b9e13f51679fe260460cad8

Amount: 4.50000000

Type: ETH

Approximate U.S. dollar equivalent: $14,067.90

b. Date/time: 11-10-2024 11:08:32

Source address: Target Address 4

Deposit address at Binance: Target Address 5

Transaction ID:

0x6e0665ee2b490f00850b6452744533495a8c9f532b754205cb2384b8ce2347d7

Amount: 90

Type: ETH

Approximate U.S. dollar equivalent: $291,941.10

c. Date/time: 11-10-2024 11:08:32

Source address: Target Address 4

Deposit address at Binance: Target Address 5

Transaction ID:

0x01cf2e0e8952a8bdf7990f6b48a22ba2a4ea7b77172b3467800cf730b14dddc0

Amount: 50

Type: ETH

Approximate U.S. dollar equivalent: $159,358.00

64. In addition to the funds traceable to a portion of the funds defrauded from VICTIM-1, the following additional deposit was made into the **Target Account** between November 10, 2024, and November 14, 2024:

a. Date/time: 11-12-2024 10:45:04

Source address: TJdT6gsi5Y3qfD5xDeMcNKSiBvFRmLoXcG

Deposit address at Binance: TMxoQB97ojgscMRtRaT7KUJXjtbQysjZHg

Transaction ID:

1efe1159401b2c351f2ecfe1f7557c789e7d5acd7dd85219c5168a6556a851c9

Amount: 500,000

Type: USDT (via the Tron network)

Approximate U.S. dollar equivalent: $500,000.00

65. From November 10, 2024, through November 14, 2024, there were approximately 562 transactions in the **Target Account** where ETH was swapped for SOL. I believe this ETH is traceable to a portion of the funds defrauded from VICTIM-1. In total, approximately 87.10552500 ETH were swapped for 1,403.957 SOL.

66. On November 13, 2024, approximately 557,928.66910023 USDT was swapped for approximately 2,707.018 SOL in approximately 122 transactions.

67. Based on my training and experience, I know that subjects who illicitly use virtual currency will often swap cryptocurrency from the original type of cryptocurrency to another type of cryptocurrency, or from one blockchain (e.g. Ethereum, Tron, Solana, Bitcoin) to another, in an effort to obfuscate the source and nature of the funds and to make it cheaper, easier, and quicker to move those funds.

68. I submit that the evidence gathered thus far establishes probable cause to believe that the **Target Account** was used as part of a money laundering scheme to obfuscate the origin of the criminal proceeds of a cryptocurrency confidence investment scheme involving VICTIM-1, VICTIM-2, and others currently unknown.

69. I submit that the above virtual currency tracing has shown that at least a portion of the illicitly obtained ETH was laundered through many virtual currency addresses, including the two addresses VICTIM-1 initially sent virtual currency (0x3e0a…023f and 0x9c9a…04c1), Target Addresses 1, 2, 3, and 4, and ultimately, the **Target Account**.

70. Per records provided by Binance, the **Target Account** currently contains the following virtual currencies[10]. The chart displays the approximate US dollar value based on the price of each virtual currency on November 14, 2024:

| Asset Abbreviation | Asset Name | Quantity | Estimated US Dollar Value |
|---|---|---|---|
| ETH | Ethereum | 50.00005549 | $ 159,358.17 |
| SOL | Solana | 3950.99605 | $ 850,017.29 |
| | | Total: | $ 1,009,375.46 |

71. Further, the government seeks to seize the **Target Account** as property that facilitated money laundering by obfuscating the origin of the criminal proceeds.

## CONCLUSION

72. Based on the foregoing, I submit that there is probable cause to establish:

a. VICTIM-1 communicated online with an individual VICTIM-1 believed to be named "Eva," during which Eva, by means of false or fraudulent pretenses, representations, or promises, convinced VICTIM-1 to convert $125,000.00 into the cryptocurrency Ether (ETH) and to send those funds to an Ethereum address, where VICTIM-1 intended to invest as Eva suggested, or to pay what VICTIM-1 believed were taxes required to be paid to withdraw funds, when in fact VICTIM-1's funds were not invested nor were they available for VICTIM-1 to withdraw, all of which

[10] In addition to the virtual currencies listed in the table, the account also contains small amounts of BNB, Pepe, Bitcoin, and USDT. The United States is not seeking to seize these additional virtual currencies at this time.

constitutes a wire fraud offense or offenses in violation of Title 18, United States Code, Sections 1343 and 1349;

b. The **Target Account** received proceeds of the wire fraud offense or offenses, and that the **Target Account** and **Target Funds** are property traceable to those wire fraud offense or offenses; and

c. The **Target Account** was used to commit concealment money laundering transactions in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h) and that all of the **Target Funds** in the **Target Account** were involved in that money laundering conduct.

73. Therefore, I submit that all of the **Target Funds** in the **Target Account** are subject to forfeiture, and are therefore likewise subject to seizure, as property used to commit and therefore "involved in" money laundering conduct.

74. Based on the foregoing, I submit that there is probable cause to establish that the **Target Funds** in the **Target Account** are:

a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. §§ 1343 and 1349, and therefore subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

b. Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

c. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###

## ATTACHMENT A

### I. Seizure Procedure

The United States is authorized to seize all Ether (ETH) and Solana (SOL) cryptocurrency, including approximately 50.00005549 Ether (ETH) and 3950.99605 Solana (SOL), on deposit in the **Target Account** by having the Subject Provider transfer all funds in the **Target Account** to a United States-controlled virtual currency wallet specified by the government.

Binance is instructed to allow incoming funds but not allow funds to be withdrawn, transferred, wired, routed or otherwise disbursed by or to any persons (other than the federal agents authorized to seize the funds) for a period of three (3) days from the service of the warrant.

### II. Subject Provider

**Nest Services Limited**

**House of Francis, Room 303, Ile Du Port, Mahe, Seychelles**

### III. Target Account

| User ID | Name | Email Address |
|---|---|---|
| **715378275** | Ngoc Anh Nguyen | 969166888ck@gmail.com. |